NORRIS McLAUGHLIN, P.A.
Edward G. Sponzilli, Esq.
Mariya Gonor, Esq.
Matthew C. Wells, Esq.
400 Crossing Boulevard, 8th Floor
Bridgewater, New Jersey 08807
General 908-722-0700 Fax 908-722-0755
Direct: 908-252-4166
Email: egsponzilli@norris-law.com
*Attorneys for Defendants The Trustees of Princeton University, Martin Krzywicki, Tyler Vandegrift, Kristina Tucker, Kevin Rhoades, Peter Grossgold, and Robert Miller*

| | | |
|---|---|---|
| JOHN DOE and JANE DOE, per quod, | : | UNITED STATES DISTRICT COURT |
| | : | FOR THE DISTRICT OF NEW JERSEY |
| Plaintiffs, | : | |
| | : | CIVIL ACTION NO.: |
| vs. | : | |
| | : | ELECTRONICALLY FILED |
| PRINCETON PLASMA PHYSICS | : | |
| LABORATORY, PRINCETON | : | |
| UNIVERSITY, PRINCETON | : | **NOTICE OF REMOVAL** |
| UNIVERSITY DEPARTMENT OF | : | |
| PUBLIC SAFETY, STATE OF NEW | : | |
| JERSEY, NEW JERSEY STATE | | |
| POLICE, DETECTIVE MARTIN | | |
| KRZYWICKI, OFFICER TYLER | | |
| VANDEGRIFT, CORPORAL KRISTINA | | |
| TUCKER, CAPTAIN KEVIN RHODES, | | |
| PETER GROSSGOLD, ROBERT | | |
| MILLER, JOHN DOE 1-10 and ABC | | |
| CORP., INC. 1-10 (said names being | | |
| fictitious) | | |
| Defendants. | | |

Pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446, Defendant The Trustees of Princeton

University (improperly pled as "Princeton Plasma Physics Laboratory" and Princeton University

Department of Public Safety", which are both constituent units of Princeton, not distinct legal

entities) (hereinafter referred to as "Princeton" or "Removing Defendant"), hereby removes this

action, with full reservation of all defenses, which had been pending in the Superior Court of New

Jersey, Law Division, Middlesex County, Docket No. MID-L-5983-25 (the "Subject Action"), to the United States District Court for the District of New Jersey, and states as follows:

1.    <u>Complaint</u>.  On or about August 18, 2025, Plaintiffs John Doe ("Mr. Doe") and Jane Doe ("Mrs. Doe") (together "Plaintiffs") filed a Complaint against Princeton, and Defendants State of New Jersey, New Jersey State Police, Detective Martin Krzywicki, Officer Tyler Vandegrift, Corporal Kristina Tucker, Captain Kevin Rhodes, Peter Grossgold, Robert Miller, and various fictitious individuals and entities. Plaintiffs filed an Amended Complaint on August 25, 2025, asserting claims that include violations of the United States Constitution and 42 U.S.C. § 1983. <u>See</u> Amended Complaint (Am. Compl."), ¶¶ 125, 132, 138. Plaintiffs sets forth claims against Princeton for (1) False Arrest "in violation of 42 U.S.C. 1983..." (Am Compl., ¶ 121) and "in reckless disregard for Plaintiff's Fourth Amendment rights (<u>Id.</u> ¶ 125); and (2) Unreasonable Seizure/Deprivation of Liberty "within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution and in violation of 42 U.S.C. §1983" (<u>Id.</u> ¶ 132), and "in reckless disregard of Plaintiff's Fourth and Fourteenth Amendment rights." <u>Id.</u>, ¶ 138. Accordingly, in addition to various state law claims, the claims asserted against the Removing Defendant in Plaintiffs' Amended Complaint are based in federal law and raise a federal question. A copy of the Summons and Amended Complaint which constitute all process, pleadings, and orders served upon the Removing Defendant are attached as **Exhibit A**.

2.    <u>Basis for Jurisdiction in this Court</u>.  This Court has federal question jurisdiction over this matter under 28 <u>U.S.C.</u> § 1331 which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 <u>U.S.C.</u> § 1367 which provides that "the district courts shall have supplemental jurisdiction over all other

claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." See also United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966).

3.    Consent. Princeton is the Removing Defendant and consents to removal. Additionally, Defendants Krzywicki, Vandegrift, Tucker, Rhodes, Grossgold, and Miller consent to removal. Upon information and belief, no other defendants have been served as of the filing of this Notice of Removal, and the New Jersey Superior Court docket does not reflect that any other defendants have been served. The consent of defendants who have not been properly served is not required for removal. 28 U.S.C. §1446(b)(2)(A).

4.    Notice Given. The Removing Defendant will file a true and correct copy of this Notice of Removal with the Clerk of the Superior Court of New Jersey, Law Division, Middlesex County, and serve same as set forth in the Declaration of Service submitted herewith. See 28 U.S.C. §1446(d).

5.    Removal is Timely. This Notice of Removal is signed pursuant to Fed. R. Civ. P. 11 and is timely filed within 30 days after September 10, 2025, the date the Removing Defendant received a copy of Plaintiff's Complaint. See 28 U.S.C. §1446(b).

6.    Pleadings and Process. As required by 28 U.S.C. §1446(a), the Removing Defendant has attached as **Exhibit A** to this Notice of Removal "a copy of all process, pleadings, and orders served upon" it in the Subject Action.

7.    Prerequisites. The prerequisites for removal under 28 U.S.C. § 1441 have been met.

8.     <u>Venue</u>.  Removal to the United States District Court for the District of New Jersey is appropriate because the Subject Action is being removed from the Superior Court of New Jersey, Middlesex County, which is located within the District of New Jersey.

9.     <u>Defenses</u>. By removing the Subject Action to this Court, the Removing Defendant does not waive any defenses available to it.

10.     If any question arises as to the propriety of the removal of the Subject Action, the Removing Defendant respectfully requests the opportunity to present a brief and oral argument in support of its position that this case is removable.

WHEREFORE, the Removing Defendant respectfully requests that this Notice of Removal be filed; that the Subject Action in the Superior Court of New Jersey, Middlesex County, be removed to this District Court; and that no further proceedings be had in the Superior Court of New Jersey, Middlesex County.

**NORRIS MCLAUGHLIN, P.A.**
*Attorneys for Defendants The Trustees of Princeton University, Martin Krzywicki, Tyler Vandegrift, Kristina Tucker, Kevin Rhoades, Peter Grossgold, and Robert Miller*


By: <u>*/s/ Edward G. Sponzilli*</u>
    Edward G. Sponzilli, Esq.

Dated: October 8, 2025

## **LOCAL RULE 11.2 CERTIFICATION**

Pursuant to Local Civil Rule 11.2, the undersigned hereby certifies that, at the time of filing the within, the undersigned is not aware that the matter in controversy is the subject of actions pending in any other court, or of any pending arbitration or administrative proceeding.

By: */s/ Edward G. Sponzilli*
Edward G. Sonzilli, Esq.

Dated:  October 8, 2025

EXHIBIT A

Joshua M. Kleinman, Esq.
NJ Attorney ID #: 121712014
UNIGLICHT, BLOOM, FRACKT & KLEINMAN
195 US Highway 9, Ste. 109B
Manalapan, NJ 07726
ATTORNEYS FOR PLAINTIFF

| | |
|---|---|
| JOHN DOE and JANE DOE, per quod,<br><br>**Plaintiff,**<br><br>vs.<br><br>PRINCETON PLASMA PHYSICS LABORATORY, PRINCETON UNIVERSITY, PRINCETON UNIVERSITY DEPARTMENT OF PUBLIC SAFETY, STATE OF NEW JERSEY, NEW JERSEY STATE POLICE, DETECTIVE MARTIN KRZYWICKI, OFFICER TYLER VANDEGRIFT, CORPORAL KRISTINA TUCKER, CAPTAIN KEVIN RHODES, PETER GROSSGOLD, ROBERT MILLER, JOHN DOE 1-10 and ABC CORP., INC.1-10, **(said names being fictitious)**<br><br>**Defendant.** | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MIDDLESEX COUNTY DOCKET NO.: MID-L-<br><br><br>**CIVIL ACTION**<br><br>**SUMMONS** |

**From the State of New Jersey to the Defendant(s) named above: Princeton University**

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this Summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the Complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior

Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625. A filing fee payable to the

Clerk of the Superior Court and a completed Case Information Statement (available from the

deputy clerk of the Superior Court) must accompany your answer or motion when it is filed.

You must also send a copy of your answer or motion to plaintiff's attorney whose name and

address appear above, or to plaintiff, if no attorney is named above. A telephone call will not

protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and

completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the Court may

enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If

judgment is entered against you, the Sheriff may seize your money, wages or property to pay all

or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you
live. If you do not have an attorney and are not eligible for free legal assistance, you may obtain
a referral to an attorney by calling one of the Lawyer Referral Services.

Dated: September 10, 2025                          /s/*Michelle M. Smith*
                                                   Michelle M. Smith
                                                   Clerk of the Superior Court

Name of Defendant to be Served: Princeton University

Address of Defendant to be Served: 41 Olden Street, Princeton, NJ 08544

Joshua M. Kleinman, Esq.
NJ Attorney ID #: 121712014
UNIGLICHT, BLOOM, FRACKT & KLEINMAN
195 US Highway 9, Ste. 109B
Manalapan, NJ 07726
ATTORNEYS FOR PLAINTIFF

| | |
|---|---|
| JOHN DOE and JANE DOE, per quod, <br><br> **Plaintiff,** <br><br> vs. <br><br> PRINCETON PLASMA PHYSICS LABORATORY, PRINCETON UNIVERSITY, PRINCETON UNIVERSITY DEPARTMENT OF PUBLIC SAFETY, STATE OF NEW JERSEY, NEW JERSEY STATE POLICE, DETECTIVE MARTIN KRZYWICKI, OFFICER TYLER VANDEGRIFT, CORPORAL KRISTINA TUCKER, CAPTAIN KEVIN RHODES, PETER GROSSGOLD, ROBERT MILLER, JOHN DOE 1-10 and ABC CORP., INC.1-10, **(said names being fictitious)** <br><br> **Defendant.** | SUPERIOR COURT OF NEW JERSEY <br> LAW DIVISION: MIDDLESEX COUNTY <br> DOCKET NO.: MID-L- <br><br><br> <u>**CIVIL ACTION**</u> <br><br> **FIRST AMENDED COMPLAINT, JURY DEMAND, AND TRIAL COUNSEL DESIGNATION** |

Plaintiffs, John Doe and Jane Doe, complaining of the Defendants, allege and says:

<u>**INTRODUCTION**</u>

1. This is an action for damages arising from Defendants' wrongful termination of Plaintiff's employment, retaliation against Plaintiff for his whistleblowing activities, discrimination based on Plaintiff's religion and support for the Second Amendment, discrimination based on age, malicious prosecution, false arrest and false imprisonment, violations of Plaintiff's constitutional rights under the Second and Fourth Amendments, defamation, intentional and negligent infliction of emotional distress, breach of the implied covenant of good faith and fair dealing, civil conspiracy, abuse of process and per quod.

2. These actions were motivated, in part, by discriminatory animus against Plaintiff as a Muslim individual known to support the Second Amendment, and resulted in severe harm to Plaintiff, including loss of employment, reputational damage, emotional distress, and financial losses.

## **PARTIES**

3. Plaintiff, John Doe, is a resident of New Jersey and a Muslim individual who was employed by Defendant Princeton Plasma Physics Laboratory (PPPL) from 2004 until his wrongful termination in 2024.

4. Plaintiff, Jane Doe, is the marital partner of John Doe.

5. Defendant Princeton University is a private university located in Princeton, New Jersey, which manages PPPL under contract with the U.S. Department of Energy (DOE).

6. Defendant Princeton Plasma Physics Laboratory (PPPL) is a research facility located in Plainsboro, New Jersey, managed by Princeton University.

7. Defendant Princeton University Department of Public Safety (PUDPS) is the security and law enforcement arm of Princeton University, operating under its authority located at 200 Elm Drive, Princeton, NJ.

8. Upon information and belief, PUDPS officers, including Defendants Krzywicki, Tucker, Vandergrift, Grossgold, and John Does 1-10, exercise police powers pursuant to New Jersey statutes (N.J.S.A. 18A:6-4.2 and N.J.S.A. 18A:6-4.5), rendering them state actors for purposes of 42 U.S.C. § 1983 when performing law enforcement functions.

9. Defendant State of New Jersey and/or Defendant New Jersey State Police empowered some or all of the PUDPS officers to perform functions

10. Defendant Detective Martin Krzywicki (Krzywicki) is an employee of PUDPS and acted within the scope of his employment during the events described herein.

11. Defendant Police Officer Tyler Vandegrift (Vandergrift) is an employee of PUDPS and acted within the scope of his employment during the events described herein.

12. Defendant Corporal Kristina Tucker (Tucker) is an employee of PUDPS and acted within the scope of her employment during the events described herein.

13. Defendant Fire Captain Kevin Rhodes (Rhodes) is an employee of the PPPL Fire Department and acted within the scope of his employment during the events described herein.

14. Defendant Peter Grossgold (Grossgold) is the Head of Safeguards & Security and Emergency Services at PPPL and acted within the scope of his employment during the events described herein.

15. Defendant Robert Miller (Miller) is an employee of PPPL and acted within the scope of his employment during the events described herein.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this action as all actions took place in New Jersey.

17. This Court has personal jurisdiction over all Defendants because they are residents of New Jersey.

18. Venue is proper in Middlesex County pursuant to R. 4:3-2, as a substantial part of the events giving rise to the claims occurred in Plainsboro, Middlesex County, New Jersey.

## STATEMENT OF FACTS

19. Plaintiff, John Doe, a Muslim individual, has been a law-abiding resident of New Jersey, and is a professional who has diligently performed his duties in his workplace.

20. Plaintiff began employment at PPPL in 2004 as an electrician.

21. PPPL is a facility managed by Princeton University under contract with the U.S. Department of Energy (DOE).

22. Plaintiff had served as a member of the Champion safety committee at PPPL.

23. During his employment, Plaintiff received multiple promotions, with the most recent promotion occurring less than two months before the incident in 2024.

24. Plaintiff was one year from retirement eligibility at the time of his termination.

25. Princeton University maintains a "zero-tolerance" policy for workplace violations but rarely, if ever, enforces it.

26. This policy is outlined in a 2012 policy amendment addressing race and religion, but not firearms.

27. Plaintiff never received this 2012 policy amendment during orientation or throughout his employment and was not made aware of the policy while working for PPPL.

28. PPPL's workplace culture included frequent extreme humor among employees, including jokes about race, politics, firearms, and religion.

29. Plaintiff, known as a jokester, was subject to similar jokes about his Muslim background and age without issue.

30. Plaintiff was never written up, issued a citation, or subjected to other disciplinary actions before the incident in 2024.

31. Other employees, including those of different races, have made remarks comparable to the incident without discipline.

32. For example, a Caucasian employee who used racial slurs and physically assaulted a Black employee received only a two-week suspension.

33. For several years, Plaintiff was a whistleblower who made consistent efforts to expose mismanagement, nepotism, and misuse of public funds within his workplace.

34. These concerns included the hiring of unnecessary personnel, including friends and family, at salaries exceeding $200,000.

35. These concerns also included financial mismanagement in a $200 million ongoing recovery project, such as purchases of unneeded products costing millions, and making the wrong parts sometimes three times, which cost in the range of hundreds of thousands of dollars.

36. These concerns further included unnecessarily maintaining over $700,000 in inventory. The Plaintiff was in charge of the inventory and offered project managers the option to use it before ordering from vendors. It was ignored.

37. Additionally, these concerns involved the misrepresentation of project progress by directors to the DOE.

38. Plaintiff raised these concerns nearly weekly with management, and they all fell on deaf ears.

39. As a result, Plaintiff earned the nickname "big mouth" from colleagues and management.

40. PPPL management instructed employees, on numerous occasions, not to communicate with the DOE inspection teams from the Office of Fusion Research regarding ongoing projects.

41. This way, there were no inconsistencies with the status report made by PPPL Management.

42. After months of his concerns not being addressed, Plaintiff contacted the DOE Inspector General (IG) to report these issues.

43. This contact prompted an ongoing DOE IG investigation.

44. Plaintiff's whistleblowing activities led to retaliation against him, including maligning his reputation, harassment at work, and false allegations involving criminal charges.

45. On July 10, 2024, at or around 6:00 AM, there was a fire alarm drill occurring, and while in the parking lot, Plaintiff engaged in a conversation with two PPPL colleagues.

46. As usual, the three colleagues were making jokes about the ideocracies of bureaucracies and the redundancies of the department management.

47. Another PPPL employee, Robert Miller, (hereinafter Miller), overheard the jokes.

48. Upon information and belief, Miller confronted Plaintiff and was upset by the Second Amendment and gun-related decals on the Plaintiff's vehicle.

49. Afterwards, upon information and belief, Miller reported to HR that Plaintiff threatened to "shoot" Plaintiff's manager, a colleague and friend of Plaintiff's for 19 years, and others.

50. Miller also reported that the Plaintiff threatened to destroy property.

51. The plaintiff denied and continues to deny making such threats.

52. Additionally, Miller stated to officers of PUDPS that the statement by the Plaintiff was said in a "joking tone."

53. These accusations were baseless and were made without any credible evidence or proper investigation into their veracity.

54. At or around 9:00 AM on July 10, 2024, Defendant Rhodes, Captain of PPPL security, informed Plaintiff of the complaint.

55. Rhodes told Plaintiff to undergo an evaluation by the house Doctor at the Occupational Medical Office [hereinafter OMO], at PPPL, and told Plaintiff that failure to comply

would result in Plaintiff being arrested, despite the lack of any evidence of imminent danger or history of violent behavior.

56. The house Doctor stated to Defendant Rhodes that she was not qualified to evaluate and requested that the plaintiff be taken to Penn Medicine.

57. After the coerced mental evaluation at the PPPL OMO Doctor, at 9:30 AM, Captain Rhodes, his supervisor, Peter Grossgold, and other security personnel forcibly transported Plaintiff for an additional assessment at Penn Medicine Center, which the Plaintiff was forced to pay.

58. Upon information and belief, the evaluation, which a counselor and a psychiatrist performed, concluded that Plaintiff posed no threats to himself and anyone else.

59. While Plaintiff was still at the hospital and not yet discharged, Captain Rhodes stated that the plaintiff would be terminated and "out by Friday," to the Public Safety officers, as recorded on their body cameras.

60. After the release from the Hospital, the plaintiff was sent home on an Uber by Defendants Rhode and Grossgold.

61. Despite this acknowledgment from Penn Medicine, on the same day, Plaintiff was wrongfully arrested at 11:55 PM at his home on false charges, without probable cause or justification, further causing embarrassment and humiliation in his home community.

62. On July 11, 2024, Princeton Plasma Physics Laboratory's HR department issued a public acknowledgment that Plaintiff posed no danger at any time.

63. The arresting officers included Defendant Detective Krzywicki, a PUDPS employee.

64. Plaintiff was not read his Miranda rights during the arrest.

65. Defendant Krzywicki applied for a warrant alleging Plaintiff made a terroristic threat with the intent to terrorize.

66. The warrant also alleged that Plaintiff threatened to destroy property and sought "Payback" to Captain Rhode and his department head, Defendant Peter Grossgold.

67. Upon information and belief, Defendant Krzywicki, Vandergrift, Tucker, and/or John Does 1-10 falsely alleged Plaintiff threatened individuals "with the purpose to terrorize," and he misrepresented statements like "payback" and concerns regarding retrieving a bicycle from his son 18 years prior as evidence of threats to harm persons or property.

68. Contrary to Defendant Krzywicki's claims, the alleged victim was at home during the alleged events and did not hear any statements or feel threatened, nor did Plaintiff act in a manner that could be reasonably construed as threatening.

69. Additionally, Officers were told by Defendant Grossgold that Plaintiff's statement of "payback" was not a threat of violence.

70. Upon information and belief, Defendant Krzywicki manipulated and fabricated information to secure an arrest warrant against Plaintiff.

71. The warrant included references to Plaintiff's lawful ownership of fourteen registered handguns, stored securely in a gun safe at home.

72. The warrant also referenced the Second Amendment and gun decals on the Plaintiff's vehicle.

73. Defendant Krzywicki falsely claimed to have conducted interviews.

74. Defendant Krzywicki falsely claimed to have provided copies of a temporary restraining order to Plaintiff and his wife.

75. These false claims are contradicted by Ring video evidence.

76. Pursuant to the Narrative of Patrolmen Tyle Vandegrift, Defendant Peter Grossgold refused to file criminal charges or notify federal law enforcement, believing the matter was an HR issue.

77. Upon information and belief, before the arrest, Defendant Kryzwicki obtained a Temporary Extreme Risk Protection Order [hereinafter TERPO] from the Plainsboro Municipal Court using false information at 10:30 pm on July 10, 2024.

78. The plaintiff was wrongfully arrested at his home on or about 11:55 p.m. on July 10, 2024, further causing embarrassment and humiliation.

79. The plaintiff was transported to the Princeton Public Safety office and detained there until being transported to the Middlesex County jail at 2:00 a.m. after his arrest.

80. Specifically, Defendant Kryzwicki applied for the TERPO "because of concerning statements that [Plaintiff] made and his possible mental health issues."

81. The court later dismissed the TERPO due to insufficient evidence.

82. On November 13, 2024, the prosecutor dismissed all charges against the Plaintiff.

83. On December 4, 2024, in a judicial hearing, the claims against Plaintiff were dismissed due to insufficient evidence, and his firearms and rights have been restored.

84. Plaintiff owns 14 lawfully registered handguns and has always maintained strict adherence to firearm laws.

85. Plaintiff's Second Amendment rights were violated when his firearms were unlawfully seized based on fabricated allegations.

86. Plaintiff was detained and subjected to public humiliation, causing significant emotional distress and reputational harm to the plaintiff and his wife, who subsequently needed medical care and treatment for the anxiety suffered and fear of any further unjust police raids on their home.

87. Plaintiff was terminated immediately following the incident, rather than suspended with an investigation.

88. The termination occurred despite the lack of substantiated evidence.

89. The information available to Princeton University at the time of the termination decision is clear that a group of colleagues was in the parking lot, joking around with each other.

90. Plaintiff emailed the university president, the senior vice president, the legal counsel, and the vice president of HR.

91. Additionally, emails were sent to the Director, Deputy Director, and the Associate Director of PPPL requesting an investigation.

92. In the email, Plaintiff requested an investigation and reinstatement.

93. Plaintiff received no response to any of the emails.

94. The arrest and criminal charges appeared on the Plaintiff's background check.

95. As a result of the criminal suit and arrest record, Plaintiff lost employment opportunities for which he was qualified.

96. Specifically, job offers for managerial positions were rescinded after background checks revealed the arrest, despite the Plaintiff being qualified for these roles.

97. Plaintiff has been unable to secure other jobs he was qualified for due to the criminal suit's impact on his record.

98. The Department of Labor investigated Plaintiff's unemployment claim, which PPPL contested.

99. An appeal determined that PPPL failed to substantiate its claims against the Plaintiff.

100. Plaintiff's lawful ownership of firearms and display of Second Amendment decals were cited in the warrant application.

101. Despite the dismissal of the TERPO and the lack of any credible evidence, Plaintiff was subjected to malicious prosecution and discriminatory treatment by the Defendants.

102. Upon information and belief, the actions of the Defendants were motivated, in part, by discriminatory animus based on their race, ethnicity, age, and/or national origin.

103. Defendants failed to conduct a proper investigation into the allegations against the plaintiff and acted with reckless disregard for his rights and well-being.

104. Plaintiff alleges that Detective Krzywicki misrepresented facts to secure a warrant.

105. This misrepresentation contributed to the Plaintiff's wrongful arrest and termination.

106. PUDPS operates under Princeton University's authority, and it is unclear if they have full police powers.

107. Plaintiff further alleges that his termination was retaliatory due to his whistleblowing activities.

108. Plaintiff alleges that his termination violated his Second Amendment rights.

109. Plaintiff's reputation has suffered irreparable harm due to the false arrest, accusations, and seizure of his firearms.

110. The allegations were widely disseminated, causing damage to the plaintiff's standing in the community and among professional contacts.

**111.** Plaintiff's arrest and the subsequent legal proceedings caused him and his wife to suffer severe emotional distress, damage to his reputation, financial losses, and other harms.

112. Defendant State of New Jersey and/or Defendant New Jersey State Police empowered some or all of the PUDPS officers to perform functions

## Count I
## False Arrest

113. Plaintiff repeats and realleges the allegations set forth in the aforementioned paragraphs as if fully set forth herein.

114. Employees of Defendants PPPL and PUDPS initially detained Plaintiff against his will and forced him to undergo psychiatric evaluations.

115. On July 10, 2024, Defendant Kryzwicki of the Princeton University Department of Public Safety arrested Plaintiff based on fabricated allegations.

116. Upon information and belief, Defendant Kryzwicki is a sworn officer empowered by Defendant the State of NJ with police officer functions.

117. The detention was unlawful and without legal justification or probable cause.

118. Defendant Krzywicki arrested Plaintiff without probable cause based on fabricated allegations that Plaintiff made actual threats to harm his supervisor and himself.

119. Princeton Plasma Physics Laboratory's HR department had issued a public acknowledgment that Plaintiff posed no danger at any time, yet he was still wrongfully arrested.

120. Defendant Krzywicki manipulated information to secure an arrest warrant and TERPO against Plaintiff.

121. Defendant Princeton University, PUDPS, PPPL, and Krzywicki's arrest and/or detention of Plaintiff was against the Plaintiff's will and was done without proper legal authority or legal justification in violation of 42 U.S.C. 1983 and New Jersey Statute(s).

122. Plaintiff did not make any threatening statements or display any intent to harm anyone.

123. The claims against Plaintiff were later dismissed due to insufficient evidence on December 4, 2024.

124. Plaintiff suffered damages as a result of Defendant Princeton University, PUDPS, PPPL, and Krzywicki's actions.

125. Defendants Princeton University, PUDPS, PPPL, and Krzywicki acted in reckless disregard for Plaintiff's Fourth Amendment rights.

126. Defendants Princeton University, PUDPS, PPPL, and Krzywicki's conduct was the proximate cause of damages suffered by Plaintiff.

127. Upon information and belief, Defendants the State of NJ and/or New Jersey State Police, granted Princeton University, PPPL, PUDPS, and Kryzwicki with police powers, including those to arrest and detain.

**WHEREFORE,** Plaintiff demands judgment against the Defendants, State of NJ, Princeton University, New Jersey State Police, PPPL, PUDPS, Krzywicki, Rhodes, Grossgold, Tucker, Vandegrift, and John Does 1-10 as follows:

    **a.** Compensatory damages;

    **b.** Consequential damages;

    **c.** Punitive damages.

    **d.** Statutory damages;

    **e.** Actual damages.

    **f.** Attorneys' fees and costs of suit; and

    **g.** Such other and further relief as this Court may deem just and equitable.

## Count II

### Unreasonable Seizure/Deprivation of Liberty

128. Plaintiffs repeat and realleges the allegations set forth in the aforementioned paragraphs as if fully set forth herein.

129. Plaintiff was coerced under threat of arrest to undergo psychiatric evaluations at Princeton Medical Center and Penn Medicine.

130. Security personnel from Princeton University, PUDPS, and PPPL, including Defendants Grossgold and Rhodes, were present during these evaluations, ensuring Plaintiff could not leave.

131. Those detentions were unlawful.

132. Defendant Princeton University, PUDPS, PPPL, and Krzywicki's detention of Plaintiff against his will was a seizure within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution and in violation of 42 U.S.C. §1983.

133. Following his arrest based on fabricated allegations, Plaintiff was detained against his will.

134. The detention was based on manipulated evidence and without probable cause.

135. The claims against Plaintiff were later dismissed due to insufficient evidence.

136. Defendant Krzywicki did not have reasonable cause to seize Plaintiff.

137. Defendant Princeton University, PPPL, PUDPS, and Krzywicki's involuntary detention of Plaintiff was without reasonable cause and was the proximate cause of damages suffered by Plaintiff.

138. Defendants Princeton University, PPPL, PUDPS, and Krzywicki acted in reckless disregard of Plaintiff's Fourth and Fourteenth Amendment rights.

139. Upon information and belief, Defendants, The State of NJ and/or New Jersey State Police, granted Defendants Princeton University, PPPL, PUDPS, Krzywicki, Tucker, Vandergrift, Grossgold, and John Does 1-10 with police powers, including those to arrest and detain.

**WHEREFORE,** Plaintiffs demand judgment against the Defendants, State of NJ, Princeton University, New Jersey State Police, PPPL, PUDPS, Krzywicki, Rhodes, Grossgold, Tucker, Vandegrift, and John Does 1-10 as follows:

**h.** Compensatory damages;

**i.** Consequential damages;

**j.** Punitive damages.

**k.** Statutory damages;

**l.** Actual damages.

**m.** Attorneys' fees and costs of suit; and

**n.** Such other and further relief as this Court may deem just and equitable.

## Count III
## Abuse of Process

140. Plaintiffs repeat and realleges the allegations set forth in the aforementioned paragraphs as if fully set forth herein.

141. Upon information and belief, Defendants Krzywicki, Tucker, Vandergrift, Grossgold, and/or John Does 1-10 (Officers) are sworn officers empowered by Defendant the State of NJ and the New Jersey State Police with police officer functions.

142. Upon information and belief, an arrest warrant was sought against Plaintiff based on the Statements of Defendant Krzywicki and Vandergrift.

143. A Temporary Extreme Risk Protective Order (TERPO) was filed against Plaintiff based on these same statements.

144. These actions were motivated by malice.

145. Upon information and belief, Officers manipulated and fabricated information to secure an arrest warrant against Plaintiff, demonstrating malice.

146. There was no credible evidence to support the allegations of terroristic threats against Plaintiffs.

147. Pursuant to NJSA 2C:12-3, terroristic threats require "the purpose to terrorize another" which never occurred here.

148. Not a single witness claimed that Plaintiff's statements were threats; however, they all did state to PUDPS employees/officers that Plaintiff was joking.

149. PUDPS Officers were informed that the complaining witness overheard a statement that was said "in a joking tone".

150. Upon information and belief, that information was withheld from the Court in the Officers' pursuit of a TERPO, Search and Arrest Warrants.

151. Defendant Grossgold told Defendant Officer Vandegrift that "payback" was not a threat of physical violence.

152. Upon information and belief, that information was withheld from the Court in the Officers' pursuit of a TERPO, Search and Arrest Warrants.

153. The criminal action was terminated in favor of the Plaintiff.

154. On December 4, 2024, the claims against Plaintiff were dismissed due to insufficient evidence.

155. The court also dismissed the TERPO due to insufficient evidence.

**WHEREFORE,** Plaintiff demands judgment against the Defendants, State of NJ, New Jersey State Police Princeton University, PPPL, PUDPS, Krzywicki, Rhodes, Grossgold, Tucker, Vandegrift, and John Does 1-10 as follows:

**a.** Compensatory damages;

**b.** Consequential damages;

**c.** Punitive damages.

**d.** Statutory damages;

**e.** Actual damages.

**f.** Attorneys' fees and costs of suit; and

**g.** Such other and further relief as this Court may deem just and equitable.


## Count IV
## Intentional Infliction of Emotional Distress

156. Plaintiff repeats and realleges the allegations set forth in the aforementioned paragraphs as if fully set forth herein.

157. Upon information and belief, Defendants engaged in intentional and outrageous conduct.

158. Upon information and belief, Defendants fabricated allegations against Plaintiff, coerced him to undergo psychiatric evaluations, unlawfully arrested him, and seized his firearms.

159. Defendants pursued these actions despite knowing that Plaintiff posed no danger, as acknowledged by Princeton Plasma Physics Laboratory's HR department, and two psych evaluations.

160. Upon information and belief, Defendants intended to cause emotional distress or acted with reckless disregard of a high probability of causing emotional distress.

161. Defendants knew or should have known that their actions would cause Plaintiff severe emotional distress.

162. Defendants continued their course of conduct despite this knowledge.

163. Plaintiff suffered severe emotional distress, public humiliation, and reputational harm as a result of the defendants' conduct.

164. Plaintiff was subjected to public humiliation during his arrest and detention.

165. Plaintiff's reputation in the community and among professional contacts was severely damaged.

166. Defendants' conduct was the proximate cause of the emotional distress.

167. The emotional distress suffered by Plaintiff was a direct result of the defendants' outrageous conduct in fabricating allegations, coercing psychiatric evaluations, unlawfully arresting him, and seizing his firearms.

**WHEREFORE,** Plaintiff demands judgment against the Defendants, State of NJ, Princeton University, New Jersey State Police, PPPL, PUDPS, Krzywicki, Rhodes, Grossgold, Tucker, Vandegrift, and John Does 1-10 as follows:

   **a.** Compensatory damages;

   **b.** Consequential damages;

   **c.** Punitive damages.

   **d.** Statutory damages;

   **e.** Actual damages.

   **f.** Attorneys' fees and costs of suit; and

   **g.** Such other and further relief as this Court may deem just and equitable.

## Count V
## Defamation

168. Plaintiff repeats and realleges the allegations set forth in the aforementioned paragraphs as if fully set forth herein.

169. Defendants made false statements concerning Plaintiff.

170. Upon information and belief, Defendants falsely stated that Plaintiff had made threats to harm his supervisor.

171. Defendant Officers falsely alleged Plaintiff threatened individuals "with the purpose to terrorize," and misrepresented statements like "payback" and concerns regarding retrieving a bicycle as evidence of threats to harm persons or property.

172. These statements were false as Plaintiff did not make any threatening statements.

173. Defendant Officers communicated these statements to third parties.

174. Defendant Officers communicated these false statements to law enforcement, the court in connection with the TERPO, and the public.

175. The allegations were widely disseminated, causing damage to Plaintiff's standing in the community and among professional contacts.

176. Defendants acted with fault amounting to at least negligence.

177. Upon information and belief, Defendants acted with actual malice by knowingly making false statements or with reckless disregard for their truth or falsity.

178. Detective Krzywicki manipulated information to secure an arrest warrant and TERPO against Plaintiff.

179. Defendants pursued these false allegations despite Princeton Plasma Physics Laboratory's HR department's public acknowledgment that Plaintiff posed no danger, clearance from psychiatric evaluations, and Defendant Grossgold stating he did not want to pursue criminal charges.

180. Plaintiff suffered damages as a result of the defamatory statements.

181. Plaintiff suffered reputational harm, public humiliation, emotional distress, and financial losses as a result of these false statements.

182. Plaintiff's standing in the community and among professional contacts was severely damaged.

**WHEREFORE,** Plaintiff demands judgment against the Defendants, State of NJ, Princeton University, New Jersey State Police, PPPL, PUDPS, Krzywicki, Rhodes, Grossgold, Tucker, Vandegrift, and John Does 1-10 as follows:

a. Compensatory damages;

    **b.** Consequential damages;

    **c.** Punitive damages.

    **d.** Statutory damages;

    **e.** Actual damages.

    **f.** Attorneys' fees and costs of suit; and

    **g.** Such other and further relief as this Court may deem just and equitable.


## Count VI

### Discrimination in Violation of NJ Law Against Discrimination

183. Plaintiff repeats and realleges the allegations set forth in the aforementioned paragraphs as if fully set forth herein.

184. Plaintiff, as a Muslim, belongs to a protected class based on his race, ethnicity, and national origin.

185. Plaintiff is also a staunch supporter of the Second Amendment.

186. Plaintiff, at the time of termination, was sixty-five years old and one year from retirement.

187. Plaintiff was subjected to adverse treatment, including false accusations, arrest, detention, seizure of his firearms, termination, and damage to his reputation.

188. The adverse treatment was motivated by discrimination based on Plaintiff's protected characteristics listed above.

189. Upon information and belief, Defendants' actions against Plaintiff were motivated, in part, by discrimination based on his race, ethnicity, age, and Second Amendment supporter.

190. For example, Plaintiff was subjected to the ultimate disciplinary action, while Caucasian employees have used racial slurs and threatened violence, which only resulted in minimal discipline, such as a two-week suspension, demonstrating differential treatment.

**WHEREFORE,** Plaintiff demands judgment against the Defendants, State of NJ, Princeton University, PPPL, PUDPS, Krzywicki, Rhodes, Grossgold, Tucker, Vandegrift, and John Does 1-10 as follows:

    **a.** Compensatory damages;

    **b.** Consequential damages;

    **c.** Punitive damages.

    **d.** Statutory damages;

    **e.** Actual damages.

    **f.** Attorneys' fees and costs of suit; and

    **g.** Such other and further relief as this Court may deem just and equitable.

## Count VII

### Whistleblower Retaliation in Violation of New Jersey's Conscientious Employee Protection Act

191. Plaintiff repeats and realleges the allegations set forth in the aforementioned paragraphs as if fully set forth herein.

192. Plaintiff engaged in protected whistleblowing activity.

193. Plaintiff is a whistleblower who made consistent efforts to expose mismanagement, nepotism, and misuse of public funds within his workplace.

194. Plaintiff's whistleblowing activities constituted protected activity under New Jersey's Conscientious Employee Protection Act.

195. Plaintiff suffered adverse employment action.

196. Following his whistleblowing activities, Plaintiff suffered adverse actions, including false accusations, arrest, detention, and damage to his reputation.

197. Plaintiff's whistleblowing activities led to retaliation against him, including maligning his reputation, harassment at work, and false allegations involving criminal conduct.

198. A causal connection exists between the whistleblowing activity and the adverse action.

199. The timing and nature of the adverse actions demonstrate a causal connection to Plaintiff's whistleblowing activities.

200. The adverse actions appear to be retaliatory, designed to punish Plaintiff for his whistleblowing activities and to discourage similar activities in the future.

**WHEREFORE,** Plaintiff demands judgment against the Defendants, Princeton University, PPPL, and John Does 1-10 as follows:

**a.** Compensatory damages;

**b.** Consequential damages;

**c.** Punitive damages.

**d.** Statutory damages;

**e.** Actual damages.

**f.** Attorneys' fees and costs of suit; and

**g.** Such other and further relief as this Court may deem just and equitable.

## Count VIII
### Violation of Civil Rights in Violation of N.J. Stat. § 10:6-2

201. Plaintiff repeats and realleges the allegations set forth in the aforementioned paragraphs as if fully set forth herein.

202. Upon information and belief, Defendant Officers are sworn officers empowered by Defendant the State of NJ with police officer functions and powers.

203. Princeton University Department of Public Safety Officers Krzywicki, Tucker, Vandegrift, Grossgold, and/or John Does 1-10 acted under color of law when they arrested Plaintiff and seized his firearms.

204. Defendants' actions deprived Plaintiff of his constitutional rights, including his Second Amendment rights and his right to be free from unreasonable seizures.

205. Plaintiff owns 14 lawfully registered handguns and has always maintained strict adherence to firearm laws.

206. Plaintiff's firearms were unlawfully seized based on manipulated allegations.

207. Defendants' actions caused Plaintiff to suffer damages, including emotional distress, reputational harm, and financial losses, as a result of these violations.

208. Plaintiff was subjected to public humiliation during and after his arrest and detention.

209. Plaintiff's reputation in the community and among professional contacts was severely damaged.


**WHEREFORE,** Plaintiff demands judgment against the Defendants, State of NJ, Princeton University, New Jersey State Police, PPPL, PUDPS, Krzywicki, Rhodes, Grossgold, Tucker, Vandegrift and John Does 1-10 as follows:

    **a.** Compensatory damages;

    **b.** Consequential damages;

    **c.** Punitive damages.

    **d.** Statutory damages;

    **e.** Actual damages.

    **f.** Attorneys' fees and costs of suit; and

    **g.** Such other and further relief as this Court may deem just and equitable.

## Count IX
## Negligence and Gross Negligence

210. Plaintiff repeats and realleges the allegations set forth in the aforementioned paragraphs as if fully set forth herein.

211. Defendants Princeton University, PUDPS, PPL, Krzywicki, Tucker, Vandergrift, Grossgold, State of New Jersey, New Jersey State Police and/or John Does 1-10 owed a duty to Plaintiff.

212. Defendants' actions, as aforementioned, breached that duty.

213. Defendants' actions deprived Plaintiff of his constitutional rights, including his Second Amendment rights and his right to be free from unreasonable seizures and detentions.

214. Plaintiff's firearms were unlawfully seized based on manipulated allegations.

215. Defendants knew or should have known that the manipulated allegations would cause Plaintiff to suffer harm.

216. Defendants' actions caused Plaintiff to suffer damages, including emotional distress, reputational harm, and financial losses, as a result of these violations.

217. Plaintiff was subjected to public humiliation during and after his arrest and detention.

218. Plaintiff's reputation in the community and among professional contacts was severely damaged.

219. Defendants Princeton University, PUDPS, PPL State of New Jersey, New Jersey State Police and/or ABC 1-10 as the Officer Defendants' employer, is responsible for their employees actions under vicarious liability.

**WHEREFORE,** Plaintiff demands judgment against the Defendants, State of NJ, Princeton University, New Jersey State Police, PPPL, PUDPS, Krzywicki, Rhodes, Grossgold, Tucker, Vandegrift and John Does 1-10 as follows:

    **a.**        Compensatory damages;

    **b.**        Consequential damages;

    **c.**        Punitive damages.

    **d.**        Statutory damages;

    **e.**        Actual damages.

    **f.**        Attorneys' fees and costs of suit; and

    **g.**        Such other and further relief as this Court may deem just and equitable.

### Count X

## **Negligent Hiring and Training**

220. Plaintiff repeats and realleges the allegations set forth in the aforementioned paragraphs as if fully set forth herein.

221. Defendants Princeton University, PUDPS, PPL, State of New Jersey, New Jersey State Police and/or ABC Corp 1-10 owed a duty to Plaintiff. owed a duty to the Plaintiff and the public to exercise reasonable care in the hiring, retention, and training of their employees, including but not limited to Defendants Krzywicki, Tucker, Vandegrift, Grossgold, Rhodes, and John Does 1-10.

222. Defendants had a duty to ensure that their employees were properly qualified, trained, and supervised to perform their duties in a lawful, competent, and non-discriminatory manner.

223. Upon information and belief, Defendants failed to exercise reasonable care in the hiring, retention, and training of their employees, including but not limited to Defendants Krzywicki, Tucker, Vandegrift, Grossgold, Rhodes, and John Does 1-10.

224. Defendants knew or should have known that their employees lacked the requisite qualifications, training, or supervision necessary to perform their duties in a lawful, competent, and non-discriminatory manner.

225. Defendants failed to implement and enforce adequate policies, procedures, and training programs to ensure that their employees acted in accordance with the law and respected the constitutional rights of individuals, including the Plaintiff.

226. Defendants' failure to properly hire, retain, and train their employees directly and proximately caused the Plaintiff to suffer harm, including but not limited to:

    a)  False arrest and detention;

    b)  Unlawful seizure of property, including Plaintiff's firearms;

    c)  Emotional distress;

    d)  Reputational harm;

    e)  Financial losses; and

    f)  Other damages as set forth in this Complaint.

227. Defendants' negligent hiring, retention, and training of their employees created an unreasonable risk of harm to the Plaintiff and others similarly situated.

228. As a direct and proximate result of Defendants' negligent hiring, retention, and training, Plaintiff has suffered and continues to suffer damages, including but not limited to emotional distress, reputational harm, financial losses, and other damages as set forth in this Complaint.

**WHEREFORE,** Plaintiff demands judgment against the Defendants, State of NJ, Princeton University, New Jersey State Police, PPPL, PUDPS, ABC Corp 1-10 as follows:

**h.**    Compensatory damages;

**i.**    Consequential damages;

**j.**    Punitive damages.

**k.**    Statutory damages;

**l.**    Actual damages.

**m.**    Attorneys' fees and costs of suit; and

**n.**    Such other and further relief as this Court may deem just and equitable.

## COUNT XI
### Per Quod

229. The Plaintiff, Jane Doe, repeats each and every allegation in every Count of the Complaint and makes them a part hereof as if set forth at length herein.

230. The plaintiff, Jane Doe, is the wife of the plaintiff, John Doe, and is entitled to the services, society, and consortium of his wife.

231. As a direct result of the aforesaid accident, the plaintiff, Jane Doe, has been and will be deprived of the services, society, and consortium of the plaintiff.

WHEREFORE, the plaintiff, Jane Doe, demands judgment on this Count against all defendants both jointly and severally, for compensatory and punitive damages, interest, costs of suit, and attorney's fees.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## TRIAL COUNSEL DESIGNATED

**PLEASE TAKE NOTICE** that pursuant to Rule 4:25-4, JOSHUA M. KLEINMAN,

ESQUIRE, has been designated trial counsel in the above-captioned matter.

## CERTIFICATION

I certify, pursuant to Rule 4:5-1 that, to the best of my knowledge, information and belief

at this time, the matter in controversy is not the subject matter of any other action pending in any

Court nor of any pending arbitration proceeding, that no other action or arbitration is

contemplated and further that there are no other parties who should be joined in this action.

**DATED:** 08/25/2025                    **BY:** _____

**JOSHUA M. KLEINMAN, ESQ.**
**Attorney for Plaintiff**